UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| K.O., by and through his parent and guardian J.O., on behalf of a class of those similarly situated, | Case No. 21-CV-1837 (PJS/DJF) |
| Plaintiff, | ORDER |
| v. | |
| WILLIE L. JETT, II, in his capacity as the Commissioner of the Minnesota Department of Education, State of Minnesota, | |
| Defendant. | |

---

Jason Kim, SCHNEIDER WALLACE COTTRELL KONECKY LLP, and Sonja Dunnwald Peterson and Daniel J. Stewart, MINNESOTA DISABILITY LAW CENTER, for plaintiff.

Alexander Robertson Sloan and Martha J. Casserly, MINNESOTA ATTORNEY GENERAL'S OFFICE, for defendant.

K.O. and A.C. are young adults with disabilities who attended public school in Minnesota. After the State of Minnesota ("State") terminated their special-education services prior to their twenty-second birthdays, K.O. and A.C. brought this lawsuit against the Commissioner of the Minnesota Department of Education on behalf of themselves and a class of similarly situated individuals.[1] K.O. and A.C. contend that

---

[1]Pursuant to a stipulation of the parties, ECF No. 41, the Court has certified a class defined as follows:

(continued...)

the State violated the Individuals with Disabilities Education Act ("IDEA") by denying

special education to students with disabilities who were 21 years old and who had not

received high-school diplomas.  This matter is now before the Court on the parties'

cross-motions for summary judgment.

## I.  BACKGROUND

### A.  Statutory Framework Governing Education for Students with Disabilities

Under the IDEA, states must provide a "free appropriate public education"

("FAPE") to students with disabilities beginning with their third birthday and

continuing until their twenty-second birthday.  20 U.S.C. § 1412(a)(1)(A); *St. Johnsbury*

*Acad. v. D.H.*, 240 F.3d 163, 169 (2d Cir. 2001) (finding that "IDEA eligibility . . . may

continue until the day the claimant turns 22").  The IDEA provides one exception to this

_____

[1](...continued)
> All children (a) who are receiving or received special
> instruction and services pursuant to the Individuals with
> Disabilities Education Act and Minnesota Special Instruction
> laws from a local educational agency in Minnesota, (b) who
> became 21 years old after July 1, 2019, or will become 21
> during the pendency of this action, (c) whose special
> instruction and services ended, or will end, on July 1 after
> their 21st birthday pursuant to Minn. Stat. § 125A.03(b),
> (d) whose special instruction and services ended, or will end,
> before they complete the graduation requirements to receive
> a regular high school diploma as defined in 34 C.F.R.
> 300.102(a)(3)(iv).

ECF No. 43 at 1.

requirement:  A state need not provide FAPE to students with disabilities until age 22 if doing so "would be inconsistent with State law or practice . . . respecting the provision of public education to children in those age ranges."  20 U.S.C. § 1412(a)(1)(B)(i).[2]  In other words, the IDEA requires a state to provide FAPE to students with disabilities until their twenty-second birthdays *unless* that state does *not* provide "public education" to students *without* disabilities until they reach age 22.  The purpose of § 1412 "is to ensure equivalent educational opportunities for students with and without disabilities."  *K.L. v. R.I. Bd. of Educ.*, 907 F.3d 639, 652 (1st Cir. 2018); *see also id.* at 642 ("[A] state's provision of 'public education' for students from age 18 through age 21 triggers the IDEA's . . . FAPE mandate for students with disabilities in the same age range.").

The State requires school districts to "provide special instruction and services . . . for all children with a disability . . . [from] ages three *through* 21 in conformity with an individualized education program that meets the requirements of the [IDEA]."  Minn. Stat. § 125A.03(a) (emphasis added).  But prior to July 1, 2023, the State provided special-education services only "until July 1 after the child with a disability becomes 21 years old."  *Id.* § 125A.03(b).[3]  Under prior law, then, a child with a disability who

---

[2]The Court will refer to this exemption as the IDEA's "limitation clause."

[3]After the hearing on the parties' cross-motions, the Minnesota Legislature
(continued...)

turned 21 on June 30 would not receive any special-education services during her

twenty-first year, while a child with a disability who turned 21 on January 1 would

receive only six months of special-education services during her twenty-first year.  Only

a child born on July 2 would receive special-education services during the entirety of

her twenty-first year.

### B.   Adult Education in Minnesota

In Minnesota, traditional public schooling is offered to students until the age of

21.  *See* Minn. Stat. § 120A.20, subd. 1.  In addition, the Minnesota Department of

Education administers adult basic-education ("ABE") programs for adults of any age.

Ex. D to Kim Decl. [ECF No. 57-4] at 12:8–15:1; Minn. Stat. § 124D.52.  ABE programs

provide "academic and English language instruction necessary to earn a high school

diploma or equivalency certificate."  Minn. Stat. § 124D.52, subd. 1(a).  ABE programs

offer two types of diploma programs (a credit-completion program and a competency-

based program) as well as classes to help students obtain a GED.  Ex. C to Kim Decl.

---

[3](...continued)
amended Minn. Stat. § 125A.03(b) to provide that students with disabilities are eligible
to receive special education until their twenty-second birthdays.  *See* H. File 2497, 93rd
Leg., Reg. Sess. (Minn. 2023).  That amendment took effect on July 1, 2023.  *Id.*

The parties agree that the amendment renders moot the claims of class members
who turned or will turn 21 on or after July 1, 2022.  However, the amendment does not
affect those class members (such as K.O. and A.C.) who turned 21 before July 1, 2022.
Those class members were not provided FAPE until age 22.

[ECF No. 57-3] at 3; Ex. D to Kim Decl. at 19:19–20:4. "[M]ore than 1,000 adult learners

earn a [high-school-equivalent] diploma through ABE programs each year." Ex. C to

Kim Decl. at 4.

ABE programs are offered at "little to no cost to adult learners" and rely on both

state and federal funds. *Id.* at 3–4; *see also* Ex. D to Kim Decl. at 9:4–8, 9:18–21. Some

(but not all) ABE programs accommodate disabilities to one extent or another, but

individualized educational plans[4] "are not utilized in ABE." Ex. C to Kim Decl. at 12.

## C. *Plaintiffs*[5]

Plaintiff K.O. has an intellectual disability. 2d Am. Compl. ¶ 23. He previously

attended Ann Bremer Education Center ("Ann Bremer"), a special-education center

within the Osseo, Minnesota public-school district, and anticipated graduating in 2021.

*Id.* ¶¶ 22, 24. However, in May 2020, a month before his twenty-first birthday, K.O.

received notice from Ann Bremer that his graduation date had been moved up to July

2020, pursuant to the former version of Minn. Stat. § 125A.03(b). *Id.* ¶ 25. K.O. and his

---

[4]Individualized educational plans ("IEPs") are used by the State to ensure that students with disabilities receive FAPE in the context of preschool, elementary, and secondary education. *See* Minn. Stat. § 125A.08(b)(1) (explaining that IEPs are required so that "all students with disabilities are provided the special instruction and services which are appropriate to their needs").

[5]Plaintiffs' Second Amended Complaint also lists a third named plaintiff, D.H. But D.H. did not turn 21 until October 2022, and thus his claims were mooted by the amendment of Minn. Stat. § 125A.03(b).

guardian objected to the change to no avail, and K.O. was dismissed from Ann Bremer on July 24, 2020.  *Id*. ¶¶ 26–28.

Plaintiff A.C. is a young woman with disabilities who attended public school in Farmington, Minnesota.  *Id*. ¶ 9.  Like K.O., A.C. became ineligible to continue to receive special-education instruction from the State on the July 1 following her twenty-first birthday pursuant to the former version of Minn. Stat. § 125A.03(b).  *Id.* ¶ 11.

K.O., later joined by A.C., filed this lawsuit on behalf of himself and all others similarly situated.  Plaintiffs allege that their rights under the IDEA were violated by the enforcement of the former version of Minn. Stat. § 125A.03(b) to terminate their special-education services before they reached age 22.

## II.  ANALYSIS

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute over a fact is "material" only if its resolution might affect the outcome of the suit under the governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.

The controlling issue in this case is whether the former version of Minn. Stat.

§ 125A.03(b) (that is, the version that existed before the statute was amended on July 1,

2023) violated the IDEA.  It is undisputed that, prior to July 1, 2023, the State did not

offer FAPE to students with disabilities until their twenty-second birthdays.  It is also

undisputed that the State's practice violated the IDEA unless the State fell within the

limitation clause—that is, unless the State did *not* offer public education to students

*without* disabilities until their twenty-second birthdays.  *Cf. E.R.K. ex rel. R.K. v. Hawaii

Dep't of Educ.*, 728 F.3d 982, 987 (9th Cir. 2013) ("The Senate Report accompanying the

[IDEA's predecessor] . . . explains that states are free to elect not to provide special

education to disabled students between 18 and 21, but only if they *also* elect not to

provide 'free public education' to nondisabled students." (emphasis in original)).

The parties' dispute over the legality of the former version of Minn. Stat.

§ 125A.03(b) turns on the meaning of "public education" as that term is used in the

limitation clause of the IDEA.  Again, under the limitation clause, the State was not

required to offer FAPE to students with disabilities until age 22 if doing so "would be

inconsistent with State law or practice . . . respecting the provision of *public education* to

children in those age ranges."  20 U.S.C. § 1412(a)(1)(B)(i) (emphasis added).

The State contends that "public education" refers only to what might be called

"traditional" public education—what the State describes as "full-time, comprehensive,

free schools." Def. Memo. at 7 [ECF No. 62]. Thus, says the State, Minnesota law and

practice *are* inconsistent with providing FAPE to students with disabilities until their

twenty-second birthdays because the State offers traditional secondary-schooling to

students without disabilities only until their twenty-first birthdays. *See* Minn. Stat.

§ 120A.20, subd. 1. In the State's view, then, students with disabilities are treated the

same as students without disabilities.

Plaintiffs disagree. Plaintiffs interpret "public education" broadly to include any

instruction that is "1) provided at public expense, under public supervision and

direction . . . and 2) involves preschool, elementary, or secondary education." Pl.

Memo. at 10 [ECF No. 56] (quoting *E.R.K.*, 728 F.3d at 988). Based on this definition,

plaintiffs argue that Minnesota law and practice are *not* inconsistent with providing

FAPE until a disabled student's twenty-second birthday because the State offers ABE

programs (a form of secondary education) to students without disabilities up to (and,

indeed, even after) the age of 22.

### A. *"Public Education" Defined*

The IDEA does not define "public education," so the Court begins its analysis

with the term's ordinary meaning. *See A.R. v. Conn. State Bd. of Educ.*, 5 F.4th 155, 166

(2d Cir. 2021) ("[W]hen dealing with an undefined federal statutory term, we interpret

it in accordance with its ordinary common sense meaning."); *Iverson v. United States*, 973

F.3d 843, 847 (8th Cir. 2020) (same).  Ordinarily, for a service or resource to be deemed "public," the service or resource must be overseen and at least partially funded by the government.  *See K.L.*, 907 F.3d at 642 ("'[P]ublic education' is commonly understood to involve government funding and administration or oversight."); *see also public,* adj. *and* n., Oxford English Dictionary, https://www.oed.com/view/Entry/154052 (last visited Aug. 25, 2023) ("provided by local or central government for the community and supported by rates or taxes").[6]  Meanwhile, "education" is commonly understood to mean "the process by which students attain academic competency."  *K.L.*, 907 F.3d at 647.  Thus, the ordinary meaning of "public education" is very broad—something akin to "academic instruction provided by the government."  *Cf. id.* at 642–43 (discussing commonly understood meaning of "public education").

     That is not the end of the analysis, however.  In discerning the meaning of "public education" for purposes of the IDEA, the Court must consider not only the term's common meaning, but its meaning in *context*—that is, its meaning in light of the purpose and scope of the statute in which it appears.  The IDEA was explicitly intended to ensure that students with disabilities are provided with the same educational opportunities as students without disabilities during a specific period of time: preschool through secondary school.  *See generally* 20 U.S.C. § 1400 (describing purposes

_____

     [6]The Oxford English Dictionary further defines "public education" as "education provided by the State."

of the IDEA); *id.* § 1401(9)(C) (defining FAPE as including "an appropriate preschool, elementary school, or secondary school education in the State involved"). The IDEA does not address *post*-secondary educational opportunities. And thus, the Court concludes that, for purposes of the IDEA, "public education" is limited to government-sponsored instruction up to (but not past) the completion of secondary school. *See E.R.K.,* 728 F.3d at 988 ("Because the IDEA applies only to preschool, elementary, or secondary education . . . we do not think [the limitation clause] refers to public education outside those same categories."); *K.L.,* 907 F.3d at 644 ("Since providing 'public education' triggers the FAPE requirement, it is logical that the two terms apply to the same levels of schooling [the completion of secondary school].").

In short, the Court holds that "public education," as used in the IDEA's limitation clause, is academic instruction through the completion of secondary school (i.e., receipt of a high-school diploma or its equivalent) that is overseen and at least partially funded by the government.

### B. *"Public Education" Is Not Limited to Traditional Schools*

The State asks the Court to construe "public education" more narrowly to apply only to "full-time, comprehensive, free *schools*"—i.e., to education provided on the premises of a public preschool, elementary school, or secondary school. Def. Memo. at 7 (emphasis added). The State points out that the FAPE offered to students with

disabilities is generally offered on those premises and argues that, in order to determine

whether ABE programs qualify as "public education" within the meaning of the IDEA,

ABE programs should be compared to the FAPE that is offered to students with

disabilities.  Because FAPE is often offered on the premises of public schools, and

because ABE programs often are not, the State argues that ABE programs are not

"public education."

The Court is not persuaded.  The education offered to, say, a tenth-grade student

who does not have a disability and who is attending a traditional public high school

will often differ dramatically from the FAPE that is offered to a tenth-grade student

who has a disability and who is attending the same high school.  Yet the State would

never argue that, because the education offered to a typical student with disabilities

differs from the education offered to a typical student without disabilities, the student

without disabilities is not receiving a "public education" for purposes of the IDEA.  *Cf.*

*K.L.*, 907 F.3d at 643 n.2 (rejecting analysis that would use "FAPE, a term of art that

applies to 'special education and related services' to define the general term 'public

education'" (citation omitted)).[7]

---

[7]*See also E.R.K.*, 726 F.3d at 990 ("Education for high-school-aged students with
disabilities often differs dramatically from 'conventional' secondary education.  In light
of the variety of specialized secondary education the IDEA makes available to disabled
students, it is simply implausible that the phrase '[] public education' in the [limitation
clause] refers narrowly to a 'conventional' high school curriculum." (citations omitted)).

The State's approach is not only illogical, but it ignores the purpose of the IDEA. The IDEA ensures that students with disabilities are afforded the same educational *opportunities* as their non-disabled peers; the IDEA does not ensure that students with disabilities are educated in the same *physical location* or in the same *way* as students without disabilities. *See K.L.*, 907 F.3d at 651 ("The pertinent question is not *where* public education is provided to students without disabilities who are beyond age 18, but *whether* it is provided to them in some form." (emphasis in original)); *E.R.K.*, 726 F.3d at 990 n.6 (adult-education programs' "common characteristic—that they all lead to 'the high school diploma'—is more relevant to their status as 'secondary education' than differences in curriculum, structure, and rigor"); *see also A.R.*, 5 F.4th at 166 (states' contention that "'public education' as used in IDEA does not include adult education programs because they have some differences from education provided in the public schools would be contrary to the intent and remedial purposes of IDEA"). Limiting the scope of "public education" to "education that is delivered at so-called 'traditional' public schools would significantly curtail the number of students with disabilities—particularly those students ages 18 through 21—who would be entitled to FAPE under the IDEA." *K.L.*, 907 F.3d at 644.

Three circuits have considered arguments similar to the argument made by the State of Minnesota in this case, and all three circuits have rejected a construction of

"public education" that is cabined to traditional public schools.  *See A.R.*, 5 F.4th at 166

("The concept of 'public education' under the IDEA is not limited to educational

opportunities provided by state public schools."); *K.L.*, 907 F.3d at 644; *E.R.K.*, 728 F.3d

at 990.  This Court agrees with those courts.

### C.  ABE Programs Are "Public Education"

For reasons explained above, the Court has construed "public education" in the

limitation clause of the IDEA to mean "academic instruction through the completion of

secondary school that is overseen and at least partially funded by the government."

The ABE programs offered by the State easily qualify as "public education" under that

definition.

*First*, the ABE programs are overseen by the State and at least partially funded by

the state and federal governments.  *See* Ex. C to Kim Decl. at 3–4, 13–14; Ex. D to Kim

Decl. at 12:5–15:1 (explaining how the Minnesota Department of Education administers

ABE programs).  ABE programs are provided "at little to no cost" to students.  Ex. C to

Kim Decl. at 3.  Students in some courses may be asked to pay for program materials or

test fees, but program providers typically do not charge tuition.  Ex. D to Kim Decl. at

9:12–21.  In addition, a program provider "must waive [any] fee for participants who

are . . . unable to pay . . . to enable individuals of all socioeconomic levels to participate in the program."  Minn. Stat. § 124D.52, subd. 1(b).[8]

*Second*, the ABE programs provide a secondary education; in fact, many programs are expressly designed to help students obtain a high-school diploma or a GED.  *See* Ex. C to Kim Decl. at 3; Ex. D to Kim Decl. at 19:19–20:4. (explaining that services offered by the ABE programs include a credit-completion diploma program, a competency-based diploma program, and a GED program); *see also K.L.*, 907 F.3d at 650 (concluding that programs that prepare students to pass the GED exam or obtain a high-school diploma assist those students "in achieving a secondary-education level of academic competence").  The fact that not *all* ABE courses are geared toward obtaining a high-school diploma or GED does not mean that *none* of them qualify as "public education."  *Cf. E.R.K.*, 728 F.3d at 991 (noting that Hawaii's Community Schools for Adults offer "public education" even though some courses (e.g., parenting and sewing) do not constitute secondary education).

_____

[8]The State argues that because the ABE programs are not completely free, they cannot be "public education."  *See* Def. Reply at 5 [ECF No. 66].  Under the definition of "public education" adopted by the Court, however, there is no requirement that the education be *completely* free—only that it be funded at least in part by the government. Many (perhaps all) public schools charge fees, but that does not mean that those schools are not "public."  And the State charges fees to those who, for example, enter state parks or drive in HOV lanes, but that does not mean that state parks and HOV lanes are not public.

In short, then, through its ABE programs, the State of Minnesota offers a "public education" for purposes of the IDEA to students without disabilities until (and, indeed, after) those students reach age 22. Therefore, providing FAPE to students with disabilities until their twenty-second birthdays is not "inconsistent with State law or practice." 20 U.S.C. § 1412(a)(1)(B)(i). Because the limitation clause does not apply, the State is required to offer FAPE to students with disabilities until they reach age 22. The State failed to do so prior to July 1, 2023, when Minn. Stat. § 125A.03(b) was amended. That failure deprived K.O., A.C., and other members of the class of their rights under the IDEA, and those class members are now entitled to compensatory education.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1.    Plaintiffs' motion for summary judgment [ECF No. 54] is GRANTED to the extent described in this order.

2.    The Court DECLARES that the version of Minn. Stat. § 125A.03(b) that was in effect until July 1, 2023, violated the Individuals with Disabilities Education Act (specifically, 20 U.S.C. § 1412) insofar as that version of Minn. Stat. § 125A.03(b) denied special education to students with

disabilities who had not received high-school diplomas and who had not

yet reached the age of 22.

3.      The Court ORDERS defendant Commissioner of the Minnesota

Department of Education of the State of Minnesota to provide

compensatory education to class members who turned 21 years of age

prior to July 1, 2022.

4.      Defendant's motion for summary judgment [ECF No. 60] is DENIED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  August 25, 2023                    s/Patrick J. Schiltz
                                          Patrick J. Schiltz, Chief Judge
                                          United States District Court

-16-